IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| SHERRY L. TAYLOR,<br><br>    Plaintiff,<br><br>v.<br><br>COUNCIL ON QUALITY AND<br>LEADERSHIP,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)    No. 18-cv-02764-JTF-tmp<br>)<br>)<br>)<br>)<br>)<br>) |

## REPORT AND RECOMMENDATION

Before the court[1] is defendant Council on Quality and Leadership's ("CQL") Motion to Dismiss, filed on February 13, 2019.  (ECF No. 19.)  *Pro se* plaintiff Sherry Taylor responded on February 26, 2019 (ECF No. 23), and CQL replied on March 11, 2019 (ECF No. 26).  For the following reasons, it is recommended that CQL's motion be granted.

### I.  PROPOSED FINDINGS OF FACT

Taylor brings this sex discrimination, disability discrimination, and retaliation case against CQL under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e *et seq.*, and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12112-12117. (ECF No. 1.)  Taylor, a 55-year-old

---

[1]Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States magistrate judge for management and for all pretrial matters for determination and/or report and recommendation as appropriate.

African-American female, was hired by CQL to work as a Quality
Enhancement Specialist in September 2015.  (ECF No. 1-1 at 2.)
On September 18, 2015, Taylor, who was presumably only working
part-time for CQL, applied for a full-time Quality Enhancement
Specialist position.  (ECF No. 19-2 at 2.)  Subsequently, Taylor
learned that CQL apparently filled the full-time Quality
Enhancement Specialist position with Katherine Dunbar, a white
female.  (Id.)  Taylor filed an EEOC Charge of Discrimination on
February 17, 2016 (the "February 2016 Charge"), in which she
alleged that CQL chose not to promote her because of her age and
race.  (Id.)

     While that EEOC investigation was still pending, Taylor
filed a Chapter 13 voluntary petition for bankruptcy on January
12, 2017.  (ECF No. 19-2 at 62.)  Question 33 of the Schedule
A/B Form, which was attached to Taylor's bankruptcy petition,
asked whether Taylor had any "[c]laims against third parties,
whether or not you have filed a lawsuit."  (Id. at 21.)
Accidents, employment disputes, insurance claims, and rights to
sue were listed as examples of potential claims.  (Id.)  Even
though Taylor's February 2016 Charge remained pending, Taylor
answered "no" to Question 33.  (Id.)  On March 17, 2017, Taylor
requested that the EEOC dismiss her February 2016 Charge.  (ECF
No. 19-2 at 4.)  In her request for dismissal, Taylor asserted
that "[s]ince filing the charge of February 2016, CQL . . .

worked with me to help me feel like a valued member of the organization." (Id.)  On March 20, 2017, the EEOC dismissed the charge.  (Id. at 6.)  The bankruptcy court confirmed Taylor's Chapter 13 repayment plan on May 12, 2017.  (Id. at 69.)

The present lawsuit is not based upon the allegations Taylor made in the dismissed February 2016 Charge.  Rather, Taylor's lawsuit relates to allegations made in a second EEOC charge, which she filed on July 3, 2017 (the "July 2017 Charge").  (ECF No. 1-1 at 2.)  In the July 2017 Charge, and now in this lawsuit, Taylor alleges that CQL 1) retaliated against her after she filed the February 2016 Charge;[2] 2) denied her accommodations for a disability on May 21, 2017, and between May 23-26, 2017; and 3) terminated her employment on June 30, 2017, because of her race, disability, and in retaliation for engaging in protected activity.  (Id.)  Even after filing the July 2017 Charge, Taylor did not amend her Schedule A/B Form to include the employment dispute described in the July 2017 Charge as a potential asset.  Taylor's bankruptcy action was dismissed on December 7, 2017, for failing to make the payments required by the repayment plan.  (ECF No. 19-2 at 75.)  In the present motion, CQL argues that because Taylor failed to disclose the

_____

[2]In the July 2017 Charge, Taylor makes reference to an EEOC charge filed in June 2016.  (ECF No. 1-1 at 2.)  However, the record contains no evidence of a charge filed in June 2016.

employment dispute to the bankruptcy court, she is judicially estopped from bringing this lawsuit.  (ECF No. 19-1.)

## II.   PROPOSED CONCLUSIONS OF LAW

### A.   Legal Standards Applicable to CQL's Rule 12(b)(6) Motion

Because CQL relies on matters outside the pleadings in its Rule 12(b)(6) motion, the court must first decide whether to convert CQL's motion into a motion for summary judgment under Rule 56.  "If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  However, "[a] court that is ruling on a Rule 12(b)(6) motion may consider materials in addition to the complaint if such materials are public records or are otherwise appropriate for the taking of judicial notice."  New England Health Care Emps. Pension Fund v. Ernst & Young, LLP, 336 F.3d 495, 501 (6th Cir. 2003); see also Byrd v. Nat'l Health Corp., No. 3:18-cv-123, 2019 WL 403964, at *2 (E.D. Tenn. Jan. 31, 2019) ("[W]ithout converting the [Rule 12(b)(6)] motion into one for summary judgment, [a court may] consider 'matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint,' as well as any other matters that are otherwise appropriate for the taking of judicial notice." (quoting Amini v. Oberlin Coll., 259 F.3d 493, 502 (6th Cir. 2001))).

In its motion, CQL relies "on the pleadings and docket entries before this Court, the Equal Employment Opportunity Commission, and the Bankruptcy Court."  (ECF No. 19-1 at 3 n.1.) A court may take judicial notice of these public records.  See Kovac v. Superior Dairy, Inc., 930 F. Supp. 2d 857, 862-63 (N.D. Ohio 2013) ("EEOC charges and related documents, including right to sue letters, are public records of which the Court may take judicial notice in ruling on a motion to dismiss without having to convert the motion into one for summary judgment."); see also Hamlin v. Baptist Mem'l Hosp., No. 2:09-cv-2615, 2011 WL 902351, at *2 n.1 (W.D. Tenn. Jan. 27, 2011), adopted by, 2011 WL 901028 (W.D. Tenn. Mar. 14, 2011) ("Although the parties have attached filings from Plaintiff's bankruptcy proceeding as exhibits for consideration in this Motion, the Court may take judicial notice of these documents and consider them without converting Defendant's Motion into a motion for summary judgment[.]").  Therefore, the court will not convert CQL's Rule 12(b)(6) motion into a Rule 56 summary judgment motion.

**B.    Taylor is Judicially Estopped From Bringing This Lawsuit**

"A district court may dismiss an action on the basis of judicial estoppel under either Rule 12(b)(6) or Rule 56."  Curry v. Aerotek, Inc., No. 2:11-cv-2913, 2013 WL 3146812, at *5 (W.D. Tenn. June 18, 2013).  "The doctrine of judicial estoppel 'generally prevents a party from prevailing in one phase of a

case on an argument and then relying on a contradictory argument to prevail in another phase.'" White v. Wyndham Vacation Ownership, Inc., 617 F.3d 472, 476 (6th Cir. 2010) (quoting New Hampshire v. Maine, 532 U.S. 742, 749 (2001)). "Judicial estoppel 'bars a party from (1) asserting a position that is contrary to one that the party has asserted under oath in a prior proceeding, where (2) the prior court adopted the contrary position either as a preliminary matter or as part of a final disposition.'" Newman v. Univ. of Dayton, 751 F. App'x 809, 813 (6th Cir. 2018) (quoting White, 617 F.3d at 476).

The Sixth Circuit has "explicitly held that judicial estoppel may bar employment-related claims where the plaintiff has failed to disclose as an asset in a bankruptcy proceeding either the existence of such a claim or income derived from the employment relationship at issue."[3] Id. at 814. "[J]udicial estoppel will bar a claim when (1) a party 'assumed a position that was contrary to the one that she asserted under oath in the bankruptcy proceedings,' (2) 'the bankruptcy court adopted the contrary position either as a preliminary matter or as part of a

_____

[3]The court notes that while the doctrine of judicial estoppel may yield potentially harsh results, see White, 617 F.3d at 486–87 (Clay, J., dissenting), it has been consistently applied in the Sixth Circuit to bar a plaintiff from prosecuting a cause of action which he has omitted from his Chapter 13 bankruptcy petition. See Payne v. Cent. Def. Servs., LLC, No. 2:11-cv-2664, 2013 WL 3974575, at *6 (W.D. Tenn. June 13, 2013), adopted by, 2013 WL 3974575, at *1-2 (W.D. Tenn. Aug. 2, 2013) (citing cases).

final disposition,' and (3) the omission 'did not result from

mistake or inadvertence.'"[4]  Davis v. Fiat Chrysler Autos. U.S.,

LLC, 747 F. App'x 309, 313 (6th Cir. 2018) (quoting White, 617

F.3d at 476).

    1. Taylor Assumed a Position Contrary to the one she
       Asserted in her Bankruptcy Proceedings

"[A] debtor has an affirmative duty to disclose all of his

assets to the bankruptcy court, . . . and in the Sixth Circuit,

it is well-established that a cause of action is an asset that

must be scheduled under § 521." Williams v. Saxon Mortg.

Servs., Inc., No. 13-10817, 2014 WL 765055, at *8 (E.D. Mich.

Feb 26, 2014). "The duty to disclose a potential claim as an

asset in bankruptcy arises when the wrongful conduct giving rise

to the claim is suffered, as opposed to when an actual complaint

is filed." Harrah v. DSW Inc., 852 F. Supp. 2d 900, 903 (N.D.

Ohio Feb. 9, 2012). Additionally, "the test is not whether [the

_____

[4]In its motion, CQL places significant emphasis on the fact that
Taylor failed to disclose the employment dispute described in
the February 2016 Charge to the bankruptcy court. The present
lawsuit, however, is not based upon the allegations made in that
charge. Instead, Taylor's lawsuit relates to the employment
dispute described in the July 2017 Charge. CQL has not cited,
and this court has not found, any case where a plaintiff-debtor
has been found to be judicially estopped from pursuing a
properly disclosed employment dispute because that plaintiff
failed to disclose a different employment dispute to the
bankruptcy court. Accordingly, Taylor's failure to disclose the
employment dispute described in the February 2016 Charge has no
bearing on the issue presently before the court, i.e., whether
she should be judicially estopped from pursuing this lawsuit
based on the allegations made in the July 2017 Charge.

plaintiff-debtor] knew *all* of the facts that *could possibly* support a claim, but instead whether she had sufficient information to know that she had a possible cause of action against [the defendant] for discrimination before her bankruptcy was discharged."    Davis, 747 F. App'x at 314.    "The duty to disclose is a continuing one that does not end once the forms are submitted to the bankruptcy court."   Dickerson v. Fed. Exp. Corp., No. 2:08-cv-2868, 2010 WL 8757316, at *2 (W.D. Tenn. Mar. 10, 2010) (quoting Burnes v. Pemco Aeroplex, Inc., 291 F. 3d 1282, 1286 (11th Cir. 2002)).

On January 12, 2017, Taylor filed her bankruptcy petition along with her Schedule A/B Form.   (ECF No. 19-2 at 21, 62.) While it is unclear whether Taylor "had sufficient information to know that she had a possible cause of action" against CQL at that time, Taylor certainly knew about the alleged wrongful conduct giving rise to her claim by July 2017, when she filed the July 2017 Charge.   She was therefore required to update her bankruptcy disclosures once she had knowledge of the potential employment dispute.    See Tricoche v. Autoglassnow, LLC, No. 2:17-cv-2700, 2018 WL 7272063, at *4 (W.D. Tenn. Dec. 18, 2018) ("Debtors have a duty to update their bankruptcy disclosures during the pendency of their cases, and a failure to update is equivalent to an omission in the original petition.").   She did not amend her bankruptcy disclosures to include the employment

dispute or otherwise inform the bankruptcy court of this dispute. Because Taylor "assumed a position that was contrary to the one that she asserted under oath in the bankruptcy proceedings," the first element of judicial estoppel has been established.

2. The Bankruptcy Court Adopted the Contrary Position

As for the second element, "the Sixth Circuit has ruled that 'when a bankruptcy court - which must protect the interests of all creditors - approves a payment from the bankruptcy estate on the basis of a party's assertion of a given position, that, in our view, is sufficient judicial acceptance to estop the party from later advancing an inconsistent position.'" Scisney v. Gen. Elec. Co., No. 4:14-cv-00008, 2015 WL 7758542, at *4 (W.D. Ky. Dec. 1, 2015) (quoting Reynolds v. Comm'r of Int. Rev., 861 F.2d 469, 473 (6th Cir. 1988)); Tricoche, 2018 WL 7272063, at *4 ("Tricoche also does not dispute that the bankruptcy court adopted the position that she had no claims against Defendants when it discharged her debts, which satisfies the second White prong, adoption by the bankruptcy court."). Relying on Taylor's Schedule A/B Form, the bankruptcy court adopted a repayment plan on May 12, 2017. As discussed, Taylor had a duty to amend her bankruptcy disclosures once she knew of the employment dispute described in the July 2017 Charge. Because Taylor never amended her petition, the bankruptcy court

- 9 -

continued to rely on her initial bankruptcy petition when
deciding to keep the May 12 repayment plan intact.  See Vaughn
v. Metro. Gov't of Nashville and Davidson Cty., No. 3:12-cv-
1320, 2014 WL 234200, at *5 (M.D. Tenn. Jan. 22, 2014) ("Indeed,
had Vaughn disclosed the contingent asset at any point (even
post-confirmation) the [bankruptcy] court could have taken
account of this contingent asset, by providing full payment to
her creditors in the event of any future recovery."().
Accordingly, the second element of judicial estoppel has been
satisfied.[5]

    3. Taylor's Omission was not Caused by Mistake or
       Inadvertence

---

[5]Some courts have rejected the argument that the second element
of judicial estoppel is established where, as here, the
plaintiff-debtor's bankruptcy proceedings ended with dismissal
rather than discharge.  See Westbrook v. Bd. of Trs. of E.
Cleveland Pub. Library, No. 1:16-cv-1438, 2016 WL 4577715, at *3
(N.D. Ohio Sept. 2, 2016); George v. Fresenius Med. Care N. Am.,
No. 15-14-RLB, 2016 WL 3039827, at *3 (M.D. La. May 27, 2016).
These courts offer the following reasoning: "When a bankruptcy
is dismissed without discharge, the parties are returned to the
positions they were in before the case was initiated.
Essentially, the bankruptcy court never adopts a contrary
position for purposes of judicial estoppel."  Westbrook, 2016 WL
4577715, at *3 (internal citation and quotation omitted).  The
undersigned respectfully declines to follow these cases.  The
undersigned believes, based upon the judicial estoppel case law
in the Sixth Circuit, Taylor's inconsistent statements should
not be excused simply because her bankruptcy proceedings ended
with dismissal.  As the Sixth Circuit stated in White, "[t]his
doctrine is utilized in order to preserve the integrity of the
courts by preventing a party from abusing the judicial process
through cynical gamesmanship."  617 F.3d at 476 (internal
citation and quotation omitted).  This concern for the abuse of
the judicial process is present regardless of whether the
bankruptcy is discharged or dismissed.

The final issue is whether Taylor inadvertently or mistakenly failed to amend her Schedule A/B Form to include the claim reflected in the July 2017 Charge.  "In determining whether an omission was the result of mistake or inadvertence, we consider a litigant's 'knowledge of the factual basis of the undisclosed claims,' any 'motive for concealment,' and if 'the evidence indicates an absence of bad faith' - with particular focus on any attempt 'to advise the bankruptcy court of [an] omitted claim.'"  Davis, 747 F. App'x at 316 (quoting White, 617 F.3d at 478); Paul v. Hewlett Packard Enter., No. 16-11965, 2017 WL 3668497, at *3 (E.D. Mich. Aug. 25, 2017) ("A party's failure to report a claim to a bankruptcy court may be declared inadvertent: (1) where the debtor lacks knowledge of the factual basis of the undisclosed claims, and (2) where the debtor has no motive for concealment.  Furthermore, if the record establishes knowledge of the claim and motive for concealment, a party can prevent judicial estoppel by showing an absence of bad faith." (internal citation and quotation omitted)).  Taylor had knowledge of all the claims she now brings against CQL by the time she filed the July 2017 Charge, which was on July 3, 2017. Taylor also had motive to conceal this employment claim from the bankruptcy court.  See Harrah, 852 F. Supp. 2d at 905 ("[M]otive to conceal assets is always present in a Chapter 13 case,

- 11 -

because it is 'always in a Chapter 13 petitioner's interest to minimize income and assets.'" (quoting Lewis v. Weyerhaeuser Co., 141 F. App'x 420, 426 (6th Cir. 2005)).

The Sixth Circuit has held that "after both 'knowledge' of the claims and 'motive' to conceal claims are established in the analysis of whether the failure to disclose was 'inadvertent', it is the debtor-plaintiff's burden to set forth evidence establishing the lack of 'bad faith.'" Harrah, 852 F. Supp. 2d at 905 (citing White, 617 F.3d at 480). The "bad faith" analysis "focuses on affirmative actions taken by the debtor to notify the trustee or bankruptcy court of an omitted claim." Cruse v. Sun Prods. Corp., 221 F. Supp. 3d 990, 997 (W.D. Tenn. 2016); Tricoche, 2018 WL 7272063, at *6 ("Considered together, these cases show that the party seeking to oppose estoppel on the grounds of inadvertence or mistake must provide evidence that she notified or attempted to notify the bankruptcy court of her [] claims as potential assets.").

Taylor has not argued that she attempted to notify the bankruptcy court of her omitted claim. Rather, Taylor argues that "bad faith" is not present because she did not know that she was required to disclose the employment dispute. Taylor further contends that she consulted with an employment attorney who advised her that she was under no obligation to disclose the dispute until she filed a lawsuit. Both of Taylor's arguments

- 12 -

have been rejected by courts in this circuit. See White, 617

F.3d at 483-84 ("We also find that White's argument, based on

her bankruptcy attorney's affidavit, implying that she discussed

her harassment claim with her attorney, but that her attorney

failed to include it in the filings, and that her attorney's

mistake should excuse her omission of her harassment claim, is

unpersuasive. . . . [W]e will not deviate from the general rule

set forth in Link that litigants are bound by the actions of

their attorneys, and, therefore, find that the ambiguous

statements in the affidavit from White's bankruptcy attorney . .

. do not excuse her omission." (internal citation and quotation

omitted)); see also Payne v. Cent. Def. Servs., LLC, No. 2:11-

cv-2664, 2013 WL 3974575, at *6 (W.D. Tenn. June 13, 2013),

adopted by, 2013 WL 3974575, at *1-2 (W.D. Tenn. Aug. 2, 2013)

("Payne's alleged misunderstanding of his duty to disclose does

not demonstrate an absence of bad faith[.]").    The court

concludes that Taylor's failure to disclose the employment

dispute described in the July 2017 Charge was not caused by

mistake or inadvertence, and accordingly, the third element of

judicial estoppel has been established.

## III.    RECOMMENDATION

The court finds that Taylor is judicially estopped from

pursuing her employment dispute in federal court. Therefore, it

is recommended that CQL's Motion to Dismiss be granted.

Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

April 25, 2019
Date

## NOTICE

**WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT AND RECOMMENDED DISPOSITION, ANY PARTY MAY SERVE AND FILE SPECIFIC WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS AND RECOMMENDATIONS.    ANY PARTY MAY RESPOND TO ANOTHER PARTY'S OBJECTIONS WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY.    28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b)(2); L.R. 72.1(g)(2).    FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND FURTHER APPEAL.**